413 So.2d 10 (1982)
James A. GARDNER, Appellant,
v.
The BRADENTON HERALD, INC., Appellee.
John DOE, Appellant,
v.
The BRADENTON HERALD, INC., Appellee.
Nos. 58761, 58735.
Supreme Court of Florida.
March 4, 1982.
Rehearing Denied April 28, 1982.
Jim Smith, Atty. Gen. and James A. Purdy, Asst. Atty. Gen., Tampa, for James A. Gardner.
Edwin T. Mulock and Robert A. Farrance of Mulock & Farrance, Bradenton, for John Doe, Appellants.
Larry K. Coleman of Knowles, Blalock, Coleman & Landers, Bradenton, for appellee.
OVERTON, Justice.
This is an appeal from a trial court judgment holding section 934.091, Florida Statutes (1977), unconstitutional because it violates the freedom of the press provisions of the United States Constitution. The subject statutory section makes it a third-degree felony for any person to publish or broadcast in a newspaper, publication, or *11 electronic medium the name of any person who is a party to an interception of wire or oral communications until that person has been indicted or informed against. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972). We affirm.
This cause commenced when the Bradenton Herald, a newspaper of general circulation, sought a declaratory judgment against State Attorney James Gardner as to the constitutional application of section 934.091. The Herald possessed and wished to publish the names of persons who were the subjects of a wire intercept, among them that of intervenor John Doe. The trial court granted the requested relief, finding the statutory prohibition "obviously unconstitutional, in part, on the basis of its vagueness and uncertainty." The trial court further found the statute was an unconstitutional restriction on the freedom of the press.
The sole and limited issue for our determination concerns the authority of the state to direct without exception or procedural safeguards the criminal punishment of any person who truthfully publishes without malice the name of an unindicted subject of interceptions or wiretaps.
Section 934.091, Florida Statutes (1977), reads as follows:
(1) No person shall print, publish, or broadcast, or cause to be printed, published, or broadcasted, in any newspaper, magazine, periodical, or other publication, or from any television or radio broadcasting station, the name or identity of any person served with, or to be served with, an inventory or notification of interception of wire or oral communications pursuant to s. 934.09(7)(e) until said person has been indicted or informed against by the appropriate prosecuting authority.
(2) Whoever is convicted of the violation of the provisions of this section is guilty of a felony of the third degree, punishable as provided in s. 775.082 by a fine not to exceed $10,000, or as provided in s. 775.084.
In our opinion the statute, in its present format, is an unconstitutional restraint upon the freedom of the press guaranteed by the first and fourteenth amendments to the United States Constitution. The absolute terms of this statute effectively result in a prior restraint on the press. Prior restraints have always been accorded the most exacting judicial scrutiny. Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The United States Supreme Court has made it clear that the method of imposing restrictions on the press is not the critical factor:
Whether we view the statute as a prior restraint or as a penal sanction for publishing lawfully obtained, truthful information is not dispositive because even the latter action requires the highest form of state interest to sustain its validity.
Smith v. Daily Mail Publishing Co., 443 U.S. 97, 101-02, 99 S.Ct. 2667, 2669-70, 61 L.Ed.2d 399 (1979). The Supreme Court has recently defined the relevant constitutional standards in Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), and then commented in Daily Mail that "state action to punish the publication of truthful information seldom can satisfy" such standards. 443 U.S. at 101-2, 99 S.Ct. at 2669-70.
In Landmark a newspaper was fined under a statute for truthfully publishing the identity of a judge under investigation by the Virginia Judicial Inquiry and Review Commission. The Court posed the issue as follows:
It can be assumed for purposes of decision that confidentiality of Commission proceedings serves legitimate state interests. The question, however, is whether these interests are sufficient to justify the encroachment on First Amendment guarantees which the imposition of criminal sanctions entails... .
435 U.S. at 841, 98 S.Ct. at 1544. The Court concluded that the publication Virginia sought to punish lay "near the core of the First Amendment ...," and reiterated the conclusion in Mills v. Alabama, 384 U.S. 214, *12 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966), that "a major purpose of that Amendment was to protect the free discussion of governmental affairs." 435 U.S. at 838, 98 S.Ct. at 1541.
The Landmark issue is almost identical to that in the instant case. As in Landmark, the instant statute asserts through the means of criminal sanctions that the total confidentiality of a governmental activity is a legitimate state interest that must be preserved even at the cost of restraint upon the press. Also as in Landmark, the state in the instant case generally asserted that absent criminal sanctions the objectives of the statutory scheme would be seriously undermined. While not dispositive, we note that although most of chapter 934 tracks the federal wiretap law contained in 18 U.S.C. §§ 2510-2520 (1976), there is no provision in the federal statute which corresponds to section 934.091.
Clearly, there is no meaningful way under the statute to balance the asserted overriding governmental interest allegedly inherent in the confidentiality sought here with the restraint on the first amendment rights of the appellee newspaper. The statute as written is thus clearly unconstitutional.
We do not minimize the asserted state interests which could be affected by the contemplated publication. We believe it is important to recognize that we are not faced in this cause with a narrowly drawn statute closely tailored to interests such as protecting the national security, protecting the safety of undercover officers, preserving an ongoing investigation, protecting the life of a kidnap victim, or ensuring a fair trial. Nor are we faced with a statute incorporating adequate procedural safeguards such as a prior hearing before a court of competent jurisdiction, which would allow a balancing of interests. Finally, we emphasize that this case does not involve any question of access of the press to the identities of persons whose communications have been intercepted under chapter 934.
We also do not have before us, nor do we reach, any question concerning the possible private cause of action that John Doe or similarly situated persons might have for libel or invasion of privacy against any news medium. We decline appellant Gardner's invitation at oral argument to retroactively apply our newly approved constitutional right of privacy[1] to sustain the constitutionality of section 934.091. The state in the person of the state attorney has no standing in this proceeding to assert the privacy rights of those persons it has wiretapped.
The judgment below is affirmed.
It is so ordered.
SUNDBERG, C.J., and BOYD, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents with an opinion.
ADKINS, Justice, dissenting.
The Bradenton Herald, Inc., hereinafter referred to as the Herald, filed an action seeking a declaratory judgment as to the constitutional application of section 934.091, Florida Statutes (1977), by James A. Gardner as state attorney. The Herald alleged that it had the name and identity of persons neither indicted nor informed against by Gardner, which persons had not been served with an inventory or notification of interception of wire or oral communications pursuant to section 934.09(7), Florida Statutes (1977). The Herald alleged that it intended to publish the names of these individuals, which publication is prohibited by the provisions of section 934.091, Florida Statutes. The plaintiff alleged that the statute was unconstitutional on its face, was overbroad, was an unreasonable restraint on the freedom of press and publication enjoyed by the *13 Herald; and had a chilling effect on the publication by the Herald.
John Doe was allowed to intervene when he filed his petition alleging that the publication of the identity of persons who have had their telephones tapped, and persons who have been intercepted on tapped telephones, would be a violation of their right of privacy protected by the United States Constitution and the Florida Constitution, and that this right is paramount to any claim of freedom of press and publication. Doe alleged that he was one of the "unnamed persons" referred to in the Herald's complaint who has neither been indicted nor informed against and had not been served with an inventory or notification of interception of wire or oral communication.
The question of the right of privacy of John Doe is at issue because of the implication of a published article involving a large-scale drug investigation which specifically names John Doe as being interested, thus placing that individual in an improper, unlawful, or fraudulent light.
In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Court pointed out that the protection of a person's general right to privacy is, like the protection of his property and of his very life, left largely to the law of the individual states, but that various provisions of the federal constitution protect personal privacy from governmental invasion. The law of Florida recognizes this right to privacy in section 934.01, Florida Statutes (1977), which reads as follows:
Legislative findings.  On the basis of its own investigations and of published studies, the legislature makes the following findings:
* * * * * *
(2) In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of intrastate commerce, it is necessary for the legislature to define the circumstances and conditions under which the interception of wire and oral communications may be authorized and to prohibit any unauthorized interception of such communications and the use of the contents thereof in evidence in courts and administrative proceedings.
(3) Organized criminals make extensive use of wire and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice.
(4) To safeguard the privacy of innocent persons, the interception of wire or oral communications when none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court. Interception of wire and oral communications should further be limited to certain major types of offenses and specific categories of crime with assurance that the interception is justified and that the information obtained thereby will not be misused.
Chapter 934 presents a comprehensive plan for the use of wire and oral communications. It provides protection to the individual from unreasonable seizure of such communications as well as the right of state police agencies to intercept and use such communications in criminal investigations and as evidence when based upon probable cause. A fine balance has been struck between the rights of individuals and the interest of law enforcement.
Before a wiretap order can be issued, it must be shown that the law enforcement agency has reasonably exhausted other investigative techniques, or that other available techniques are unlikely to succeed or are too dangerous. As such, a wiretap is virtually a last resort device, the success of which depends exclusively upon the fact that the parties being intercepted have absolutely no knowledge of the wiretap.
There can be no doubt that the protection of an ongoing criminal investigation is the *14 compelling governmental interest of the highest order, which is rendered useless when a subject reads in a newspaper or sees a report on television that his phone is presently being wiretapped in connection with a criminal investigation. The injury does not stop there. Whenever a wiretap order is issued, there has to be probable cause to believe communications concerning an offense will be intercepted. This presupposes that more than one individual is involved in the crime. Therefore, if but one person's name is published, an entire investigation into the criminal activities of numerous individuals is destroyed. This is particularly true in investigations concerning narcotic or other dangerous drugs, gambling, dealing in stolen property, Florida anti-fencing act violations, and criminal conspiracies to commit such acts. Such a disclosure can also endanger the life of an individual, as in kidnapping cases.
The exhaustive showing which is required to be made prior to its approval assures that a wiretap is necessary, that other investigative techniques have failed or will fail, and that absolute secrecy is a necessity. Having succeeded in meeting such a burden in initially procuring a wiretap order, it should not be necessary to go through a repetitious procedural hearing which would fail to prove anything that has not already been shown. Procedural rules in section 934.091 would be a mere charade, accomplishing nothing and complicating much.
The nature of a wiretap, i.e. that it cannot be successful unless it is secret, and the heavy burden met in justifying the same, combine to obviate the need for procedural safeguards in this statute. That the government succeeded in having the instant wiretap approved demonstrates, without more, that the names involved should not be published prior to completion of the operation. A statute recognizing such is not unconstitutional.
There are, therefore, two compelling state interests involved: the first is the protection of the integrity of an ongoing criminal investigation; the second is the right to privacy of the individual who is the subject of the wiretap, as well as the innocent individuals who happen to make a telephone call to the phone which is being wiretapped. The limited infringement caused by this statute upon the Herald's right to print the name of a wiretap subject is neither unreasonable nor unconstitutional. The destructive impact of such a disclosure could have on an ongoing criminal investigation is enormous.
The determination of issues pitting the first amendment rights against privacy rights demands a delicate balancing because in the sphere of collision between claims of privacy and those of free speech, the interests of both sides are plainly rooted in the traditions and significant concerns of the American society. In accordance with the principles announced in Katz v. United States, the legislature of Florida by section 934.01, Florida Statutes (1977), safeguarded the privacy of innocent persons during the interception of wire or oral communications. Section 934.091 only abridges publication of the name or identity of the person served with or to be served with an inventory or notification of interception until that person has been indicted or informed against. In other words, only for that crucial period of time during a criminal investigation when the subject does not know he has been wiretapped is the press in any way abridged. At the point where the secrecy of the investigation is no longer imperative, the statute allows publication.
The use of wire interceptions is a necessary tool in fighting organized crime. The state interests and this statute are of the highest form and, when balanced against the very limited intrusion into the first amendment, the results indicate that the statute passes constitutional muster.
The majority declines to retroactively apply our newly approved constitutional right of privacy amendment to sustain the constitutionality of section 934.091, Florida Statutes (1977). The publication has not yet been made, so John Doe should have the right to invoke his constitutional privilege of privacy when the publication is eventually made after the majority opinion is filed. *15 Only then will his privacy rights be invaded. If section 934.01, Florida Statutes (1977), quoted above, was not sufficient to tip the scales in favor of the right of privacy, then certainly the constitutional amendment would have that effect.
In my opinion the judgment of the trial court should be reversed.
NOTES
[1] Section 23 of article I of the Florida Constitution, approved by the electorate in November of 1980, provides:

SECTION 23. Right of privacy.  Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.