# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00135-SCT

*JANE DOE*

*v.*

*STATE EX REL. THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND THE STATE PAROLE BOARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/26/2001 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RON L. WOODRUFF |
| | JIM WAIDE |
| | BRENT HAZZARD |
| ATTORNEYS FOR APPELLEE: | LAWRENCE LEE LITTLE |
| | DION JEFFERY SHANLEY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 11/06/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND COBB, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     The Motion to Withdraw Opinion and Substitute New Opinion, for Instructions to the Clerk of the Court and for Related Relief is granted, the original opinion issued herein is withdrawn, and this opinion is substituted in its place.

¶2.     Jane Doe sued the State of Mississippi, acting through the Mississippi Department of Corrections and the State Parole Board, under the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002), for damages sustained when she was raped by Michael M. Adams, a parolee

accepted into Mississippi for supervision from the Illinois Department of Corrections. The Lafayette County Circuit Court entered summary judgment in favor of the State. Doe appeals, arguing that her notice of claim was filed prior to the expiration of the MTCA's one-year statute of limitations and that there can be no discretionary immunity under Miss. Code Ann. § 11-46-9(1)(d) for the State where it improperly accepted Adams for parole and its parole officers failed to properly supervise Adams.

## FACTS AND PROCEDURAL HISTORY

¶3. Michael M. Adams's sordid criminal past makes his release by Illinois perplexing and not surprising, something with which Doe takes great issue. Adams was first accused on September 13, 1990, of stalking a University of Mississippi student for about one year from September of 1989. On August 21, 1990, Adams allegedly raped another University of Mississippi student. The Lafayette County Circuit Court docket indicated that Adams had been bound over to the grand jury; however, he fled Mississippi and was never tried. The case was subsequently retired to the files on May 13, 1996.

¶4 Adams had fled to Illinois where he was arrested for theft on June 15, 1991, and aggravated assault on June 25, 1991. On October 26, 1992, he was subsequently sentenced to six years for attempted robbery and burglary. Also, on October 29, 1992, he was sentenced to fourteen years per count to run concurrently for one count of home invasion and two counts of attempted aggravated sexual assault.

¶5. The incident leading to the conviction for home invasion and attempted aggravated sexual assault occurred on October 21, 1991, when Adams forced his way into a woman's apartment and attempted to sexually assault her. The woman struck Adams in the head with an ashtray causing him to bleed and thereafter flee the scene. Fingerprint evidence obtained from the scene linked Adams to the incident.

¶6. In reports submitted after each of Adams's two convictions, two assistant state's attorneys from Cook County, Illinois, recommended that Adams should be incarcerated as long as possible given his

2

propensity for preying on young women. They also recommended that "[a]ny early release would be highly objectionable."

¶7.     Adams was, however, considered for parole in July of 1998. He indicated that he would reside with his grandmother in Maple Park, Illinois, but she refused to take him into her home because there were minor girls living with her.

¶8.     On July 14, 1998, Adams filed for release to reside with his parents in Etta, Mississippi, and had secured a job waiting for him upon his return to Mississippi. Initially, the Mississippi Department of Corrections refused to accept Adams because his transfer request had been sent to the wrong county. Adams's request was thereafter sent to the correct field office and was accepted by Field Officer Stephen Smith via a Reply to Compact Investigation Request on September 16, 1998.

¶9.     Both Mississippi and Illinois are signatories to the Uniform Act for Out-of-State Parolee Supervision. *See* Miss. Code Ann. § 47-7-71 (Rev. 2000). Known as the "Compact," signatories thereto basically agree that the "receiving state" will assume supervisory responsibilities over parolees and probationers released from the "sending state." It provides in pertinent part:

> The contracting states solemnly agree:
> (1)     That it shall be competent for the duly constituted judicial and administrative authorities of a state party to this compact (herein called "sending state"), to permit any person convicted of an offense within such state and placed on probation or released on parole to reside in any other state party to this compact (herein called "receiving state"), while on probation or parole, if
> > (a)     Such person is in fact a resident of or has family residing within the receiving state and can obtain employment there;
> > (b)     Though not a resident of the receiving state and not having his family residing there, the receiving state consents to such person being sent there.
> Before granting such permission, opportunity shall be granted to the receiving state to investigate the home and prospective employment of such person.
> A resident of the receiving state, within the meaning of this section, is one who has been an actual inhabitant of such state continuously for more than one (1) year prior to his coming to the sending state and has not resided within the sending state more than six (6)

3

continuous months immediately preceding the commission of the offense for which he has been convicted.

(2)     That each receiving state will assume the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees.

Miss. Code Ann. § 47-7-71 (Rev. 2000).

¶10.     Adams was released from the Illinois prison system on October 11, 1998, with instructions to report to MDOC within 72 hours. The reporting instructions specifically stated that any failure to comply would be considered a violation of his release agreement and a warrant could be issued for Adams's arrest.

¶11.     It was not until December 16, 1998, nearly two months after Adams had been released from Illinois custody that he reported to Field Officer Smith in Mississippi. Smith never attempted to revoke Adams's parole or seek to have a warrant issued for his arrest. Instead, in reviewing Adams's paperwork, Smith classed Adams as needing "intensive supervision" which consisted of at least one home visit, one office visit, and two "collateral" visits[1] per month. Adams reported for his first office visit on January 20, 1999. Six days later on January 26, 1999, he raped Doe at her Oxford home and was subsequently indicted, tried, and convicted of rape.

¶12.     Doe filed a notice of claim with the Attorney General of Mississippi pursuant to the MTCA on January 25, 2000, one day shy of the one-year statute of limitations. She subsequently filed suit against the State of Mississippi, acting through the Mississippi Department of Corrections and the State Parole Board on May 1, 2000, within 95 days of her filing of her notice of claim. *See* Miss. Code Ann. § 11-46-11.

---

[1]A "collateral contact" or collateral visit includes "[a]ll contact not classified as personal to include contact with the person(s) with whom the offender resides, i.e. spouse, parents, relatives, landlord; and contact with any other person who has contact with the offender, i.e. employer, neighbor, minister, law enforcement personnel, teacher." MDOC Standard Operating Procedure 37.02.01 at 1.

¶13.   In her complaint, Doe alleged the willful and gross negligence of the State Parole Board and MDOC in receiving Adams for supervision from Illinois on the basis that they should have ascertained Adams's numerous prior convictions, his previous indictment in Lafayette County, and the fact that he could very well sexually assault another woman in the future. She also alleged that the State negligently supervised Adams thereby permitting him to rape her.

¶14.   The State answered, claiming, inter alia, immunity under the MTCA on the premise that the State was engaged in a discretionary function. *See* Miss. Code Ann. § 11-46-9(d). The State later amended its answer to include a statute of limitations defense.

¶15.   The State moved for summary judgment and in support thereof argued that Doe's claim was barred by the one-year statute of limitations because, according to the State, the "tortious, wrongful or otherwise actionable conduct" of Miss. Code Ann. § 11-46-11(3) occurred at the latest on December 16, 1998, the date MDOC accepted Adams for supervision, and not January 26, 1999, the date Doe was raped. The discretionary function argument was again presented.

¶16.   The Lafayette County Circuit Court granted the State's motion for summary judgment on December 26, 2001, without stating any reasons. Doe appeals and argues her claim should not have been dismissed as being time-barred under Miss. Code Ann. § 11-46-11 or on the basis that the State was immune under the discretionary function exception to liability under Miss. Code Ann. § 11-46-9(1)(d).

### STANDARD OF REVIEW

¶17.   We employ the de novo standard in reviewing a trial court's grant of summary judgment. ***O'Neal Steel, Inc. v. Millette***, 797 So. 2d 869, 872 (Miss. 2001). In conducting the de novo review, we look at all evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits. ***Lee v. Golden Triangle Planning & Dev. Dist., Inc.***, 797 So. 2d 845,

5

847 (Miss. 2001) (citing *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996)).  This

evidence must be viewed in the light most favorable to the party against whom the motion for summary

judgment has been made.  *Leslie v. City of Biloxi*, 758 So. 2d 430, 431 (Miss. 2000).

## DISCUSSION

I.      WHETHER THE STATE IS IMMUNE OR SUBJECT TO
        LIABILITY.

¶18.    As a basis for establishing liability on the part of the state, Doe argues both negligent acceptance

and supervision.  This requires an analysis of whether a private right of action exists and, if so, whether Doe

has stated a justiciable claim.

> A.      Whether the Uniform Act for Out-of-State Parolee
>         Supervision Creates a Private Right of Action.

¶19.    The general rule for the existence of a private right of action under a statute is that the party claiming

the right of action must establish a legislative intent, express or implied, to impose liability for violations of

that statute.  *See Blockbuster, Inc. v. White*, 819 So. 2d 43, 44 (Ala. 2001); *Gerrity Oil & Gas*

*Corp. v. Magness*, 946 P.2d 913, 923 (Colo. 1997); *Nichols v. Kan. Political Action Comm.*, 11

P.3d 1134, 1143 (Kan. 2000); *Charlton v. Town of Oxford*, 774 A.2d 366, 372 (Me. 2001);

*Walker v. Chouteau Lime Co.*, 849 P.2d 1085, 1086 (Okla. 1993).  We have also found no private

right of action for violations of various statutes and regulations.  *See, e.g., Moore ex rel. Moore v.*

*Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 665-66 (Miss. 2002) (finding violation of State Board of

Pharmacy's internal regulations did not create a separate cause of action); *Allyn v. Wortman*, 725 So.

2d 94, 102 (Miss. 1998) (finding Miss. Code Ann. § 75-71-501, which prohibits fraud or deceit in

connection with the offer, sale or purchase of securities did not create private right of action).

6

¶20.    For example, the above reasoning was applied in ***Hodgson v. Mississippi Department of Corrections***, 963 F. Supp. 776 (E.D. Wis. 1997), where the United States District Court for the Eastern District of Wisconsin addressed the issue of whether the Uniform Act for Out-of-State Parolee Supervision created a private right of action in favor of a plaintiff.  Albert Hodgson sued the Mississippi Department of Corrections, its commissioner, and its Compact administrator in Wisconsin federal court for the wrongful death of his daughter Monique at the hands of a Mississippi parolee who was allegedly improperly relocated to Wisconsin under the Compact.  963 F. Supp. at 781.

¶21.    The court noted that the wrongful death claim arose on August 4, 1992, the day Monique was murdered.  ***Id.*** at 788.  On the issue of whether Hodgson actually had a private right of action under the Compact, the court held:

> To determine whether a statute creates a private right of action in favor of a particular plaintiff, a court must analyze the statute itself and any relevant legislative history.  The focal point is the legislative body's intent in enacting the statute.  Unless the legislative intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.
>
> In this case, *nothing points in favor of implying a private right of action* for Hodgson.  The Uniform Act [for Out-of-State Parolee Supervision] itself contains no statement of purpose or mention of the rights of the general public or potential victims of parolees or probationers who might relocate under the Act's provisions.  At the same time, the Plaintiff has failed to point to any record of legislative history which shows that the lawmakers intended to benefit persons such as Hodgson or his daughter.

***Id.*** at 791 (citations omitted & emphasis added).  We likewise find no implied private right of action.  The Compact does not create a private right of action; therefore, Doe's negligent acceptance claim must fail absent violation of a specific statutory or regulatory directive.

> B.    Whether the State Has Violated Statutes or Regulations For
>         Which the State Could Be Held Liable.

7

¶22.    Doe contends that her action was based upon violations of statutes and not the exercise of discretionary duties for which the State would be immune.  She relies on our opinion in *Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041 (Miss. 2002), for the proposition that when one violates clear duties in a statute or regulation, the act is ministerial and not discretionary.

¶23.    The MTCA provides for governmental immunity in certain enumerated instances.  Miss. Code Ann. § 11-46-9(1) provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (d)      Based upon the exercise or performance or the failure to exercise a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

Whether governmental conduct is discretionary requires a two-prong analysis: "(1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives."  *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001) (citing *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999)).  *See also* *Pearl Pub. Sch. Dist. v. Groner*, 784 So. 2d 911, 914 (Miss. 2001); *Brewer v. Burdette*, 768 So. 2d 920, 922 (Miss. 2000).  Conversely, governmental conduct is ministerial if imposed by law, and its performance is not dependent on the employee's judgment.  *Leflore County v. Givens*, 754 So. 2d 1223, 1226 (Miss. 2000) (citing *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1141 (Miss. 1999); *Mohundro v. Alcorn County*, 675 So. 2d 848, 853 (Miss. 1996)).  Our inquiry thus turns on whether the State's actions in accepting Adams for parole or in failing to supervise him while in Mississippi violates any specific duties required by law.  Also, when a

parolee is sent from a sending state to a receiving state, that parolee is subject to the rules and regulations of the receiving state governing supervision. Miss. Code Ann. § 47-7-71(2).

### 1. Whether the State Violated Statutory Provisions in Its Acceptance of Adams.

¶24. Doe asserts two statutory violations by the State in its acceptance of Adams: first, Adams did not meet the six-month residency requirement under the Compact and, second, the State improperly accepted Adams for supervision when he was ineligible for parole in Illinois.

¶25. Mississippi's obligation to receive Adams was based upon a determination that Adams was eligible for parole in Illinois. *See* Miss. Code Ann. § 47-7-71(1). The decision to grant or deny parole is in the discretion of the Parole Board and later MDOC. *See **Moore v. Ruth***, 556 So. 2d 1059, 1061 (Miss. 1990); ***Haynes v. State***, 811 So. 2d 283, 285 (Miss. Ct. App. 2001).

¶26. Doe charges that Adams was ineligible to be received in Mississippi on parole because he had not been a resident of Mississippi for the six-month period immediately preceding the rape. We find such an analysis unnecessary. Under Miss. Code Ann. § 47-7-71(1), a probationer or parolee can be sent from the sending state to the receiving state if "(a) Such person is in fact a resident of *or* has his family residing within the receiving state and can obtain employment there. . . ." (emphasis added). A "resident of the receiving state" is

> one who has been an actual inhabitant of such state continuously for more than one (1) year prior to his coming to the sending state and has not resided within the sending state more than six (6) continuous months immediately preceding the commissions of the offense for which he has been convicted.

Miss. Code Ann. § 47-7-71(1). It matters not whether Adams is actually a "resident of the receiving state" which would be Mississippi because the use of the conjunction "or" in subsection (a) as quoted above allows a parolee to be sent to the receiving state if such person is a resident *or* he has family in the receiving

9

state. Adams clearly fell under the latter classification, for his parents are residents of Etta and he indicated he had a job waiting for him.

¶27. Doe's other alleged statutory violation is that Mississippi could not have accepted Adams for supervision because he was ineligible for parole in Illinois. She contends that when Illinois refused to parole Adams because his grandmother declined to take him into her home because minor girls resided with her, Adams was ergo ineligible for parole in Illinois. We disagree with Doe's characterization of Adams's grandmother's refusal to take him in as conclusive proof that he was denied parole in Illinois. The document indicating this "denial" was an IDOC document listing Adams's parole plans. Also included as possible host/sponsors were Adams's parents in Etta and his aunt in Chicago. Adams's parents' willingness to take him in apparently satisfied the Illinois authorities as he was paroled in Illinois and ordered to report for supervision in Mississippi under the Compact. Also, Smith stated that he verified Adams's residence and employment in Mississippi prior to responding to Illinois' request. The Parole or Mandatory Supervised Release Agreement entered into between Adams and the Illinois Prisoner Review Board further recites the fact that Adams was released on parole in Illinois.[2] The State's acceptance of Adams was proper and, indeed, was mandatory under the Compact.

### 2. Whether the State Violated Statutory Provisions in the Supervision of Adams.

---

[2]The Preamble to the agreement stated:

> This document constitutes an agreement governing persons who have been granted parole by the Illinois Prisoner Review Board or otherwise released under supervision, and defines the terms by which the undersigned is conditionally released from confinement. The rules of conduct follow. If such rules are violated, parole or mandatory supervised release *may* be revoked under the rules and regulations promulgated by the Prisoner Review Board.

(emphasis added).

¶28. Doe asserts that the State should have initiated actions to send Adams back to Illinois upon his failure to report timely and that the State's failure to supervise Adams once he did report was causally related to the rape.

¶29. Doe contends that Mississippi should have initiated actions to send Adams back to Illinois because of his failure to report within 72 hours of his release from Illinois. The only Mississippi statutory or regulatory authorities concerning the handling of a parolee's failure to contact a Field Officer are MDOC Standard Operating Procedure 37.01.01 which states, "If the request to supervise an out of state offender is accepted, however, the offender does not make contact with the accepting Field Officer within one hundred twenty (120) days of the initial acceptance date, the Interstate Compact Office shall be notified in writing." and MDOC Standard Operating Procedure 37.02.01 which states, "The initial personal contact between the newly released parolee and the supervising Field Officer should take place as soon as possible, but no more than three work days after the parolee's release from custody, unless otherwise agreed upon prior to release." Smith accepted Adams via a Reply to Compact Investigation Request on September 16, 1998, and Adams reported for supervision on December 16, 1998. Adams made contact within the 120-day window but not within three days. While Smith could have initiated actions to revoke Adams's parole and sent him back to Illinois for failing to report within 72 hours, there is nothing in the Compact or applicable MDOC regulations *requiring* him to do so. There being no statute or regulation the violation of which can be considered ministerial, the decision not to revoke Adams's parole is necessarily an exercise of discretion.[3]

---

[3]Adams had registered with the Lafayette County Sheriff's Department as a convicted sex offender.

¶30. Doe also asserts the failure to properly supervise Adams once he did report directly contributed to the eventual rape. Adams reported for supervision to Officer Smith on December 16, 1998, had one office visit with Officer Stewart on January 20, 1999, and raped Doe on January 26, 1999. Doe argues that the State violated its own directions regarding supervision because it never conducted one home visit or two collateral visits in one month. ¶31. Our inquiry thus turns to whether the decision to place Adams in intensive supervision and the failure to follow that decision are exercises of discretion or positively imposed by law. Doe argues that applicable state regulations required the State to conduct at least one home visit of Adams per month.

¶32. While the supervision procedures appear to be ministerial in nature, the Field Officer's responsibilities to monitor and supervise a parolee should be immune from suit in cases such as this one where the State had no indication of a specific threat on Adams's part to harm Doe. Doe alleged in her complaint that MDOC should have known there was probable cause to believe that Adams would again engage in acts of sexual assault in the future. Such a proposition is not entirely without merit; however, every person released on probation or parole also committed a crime in the past and, given the arguably high rates of recidivism, may very well likely commit another crime while free.[4]

¶33. A well-reasoned explanation of this position can be found in a separate opinion in *Taggart v. State*, 822 P.2d 243 (Wash. 1992) (Guy, J., concurring in part and dissenting in part). In *Taggart*, a consolidation of two cases, the plaintiffs sued the State of Washington for injuries sustained after they were brutally assaulted by parolees. 822 P.2d at 244. They claimed that the parole officers assigned to the

---

[4]Mississippi had a total parole population of 1,378 adults in 1997. Bureau of Justice Statistics, United States Department of Justice, Sourcebook of Criminal Justice Statistics 538 (2000). Also in 1997, Mississippi had 118 sentenced prisoners admitted to state institutions for parole violations. *Id*. at 539.

parolees who attacked them "failed substantially to perform their supervisory functions." ***Id.*** at 252. The majority held that the parole board was immune but that the parole officers' failures to require a parolee to submit to drug testing, contacting parolee's friends and employers ("collateral" contact), and failure to report violations of parole were administrative and supervisory failings falling outside the absolute protection afforded employees of state agencies. ***Id.*** One justice, while concurring with the majority that the parole board was immune, dissented on the issue of liability of parole officers and made the following public policy argument:

> The same public policy argument applies to parole officers. The parole board employs the parole officers to implement their administrative decisions. The board will feel a responsibility to those officers and may not wish to place them in jeopardy by paroling a person eligible for parole if the officer employed by the board is going to be legally liable for the parolee's conduct. Thus, opportunities will be lost where parole might be warranted. Successful parole requires assisting a parolee in making his or her own decisions and thus allowing some freedom of action. If the parole officer has liability for the actions of a reoffending parolee, the supervision will not be sufficiently flexible to accomplish its rehabilitative goal.
>
> Individuals on parole are generally not single offenders. They have been convicted of multiple felonies, and recidivism is high. To expect complete rehabilitation with no further offenses is unrealistic. To create liability on the parole officer is to place blame somewhere and thereby simplify a complicated social problem. The grant of "qualified" immunity by the majority is illusory and nothing more than a negligence standard wrapped like a gift box which contains sticks and ashes.
>
> The majority opinion admits that generally one does *not* have liability for the criminal acts of a third party unless one "takes charge" over that person. The issue is the parole officer's control over the parolee's actions. It is a naive fiction to say parole officers have control over felons who are *free* on parole. A person who does not have the ability to control another's conduct should not have liability imposed upon him or her for the tortious act of that other person.

***Id.*** at 263-64 (citations omitted & emphasis in original). Other courts have likewise arrived at a similar conclusion by applying the theory that the state owed no duty to the plaintiff. *See, e.g.*, ***Schmidt v. HTG, Inc.***, 961 P.2d 677, 687 (Kan. 1998) (finding no duty owed when parolee raped and killed coworker); ***Hartford Fire Ins. Co. v. State Dep't of Health & Human Resources***, 413 So. 2d

13

1360, 1361-62 (La. Ct. App. 1982) (finding no duty owed to plaintiff when parolee fire damaged plaintiff's business); ***Rogers v. S.C. Dep't of Parole & Cmty. Corrections***, 464 S.E.2d 330, 332 (S.C. 1995) (finding no duty to warn victim absent specific threats of harm against victim in case where parolee murdered victim); ***Small v. McKennan Hosp.***, 403 N.W.2d 410, 414 (S.D. 1987) (finding no liability when parolee raped and murdered victim).

¶34.     There is absolutely no indication in the record of Smith's or Stewart's knowledge of a specific intent by Adams to harm Doe.  In fact, the circumstances of the case indicate otherwise.  Adams met with Officer Stewart for an office visit on January 20 and raped Doe on January 26.  We find it implausible to believe that Doe would not have been raped had Adams's parole officer conducted the one home visit and two collateral visits.  For Doe to suggest that the State should have known that Adams could strike again overlooks the fact that every parolee can and, in many cases, does strike again, since every parolee is by definition a convicted felon.  Holding the State liable for the negligent supervision of parolees would likely force parole officers to become overly restrictive and overbearing in their supervision and become more apt to revoke paroles out of fear they could be held liable for the acts of third parties which they have no reason to believe would occur.  Since there is no evidence of a gross, reckless or wanton failure in the exercise of its statutory duty, i.e., supervising parolees, the State maintains the benefit of a shield of immunity.  *See **L.W. v. McComb Separate Mun. Sch. Dist.***, 754 So. 2d at 1142.  Also, there is no sufficient causal connection or element of foreseeability between the alleged violated statutory duty and the injury sustained.  *See **Brumfield v. Lowe***, 744 So. 2d 383, 389 (Miss. Ct. App. 1999) (finding no causal connection between defendant police officer's alleged fault in arrest of plaintiff handed over by hospital personnel after treatment for gunshot wound and later recurring injuries from wound in suit for failing to provide medical treatment).  Doe's negligent supervision claim fails as well.

14

## II. WHETHER DOE'S CAUSE OF ACTION FOR NEGLIGENT SUPERVISION ACCRUED ON OR BEFORE JANUARY 26, 1999.

¶35.    This issue concerns the actual date of the "tortious, wrongful or otherwise actionable conduct" for statute of limitations purposes.  Doe contends that the one-year period did not start running until January 26, 1999, the date she was raped.  The State responds that the period started running on either September 16, 1998, the date Adams was initially accepted, or December 16, 1998, the date Adams reported for supervision.

¶36.    The MTCA provides for a one-year statute of limitations:

> All actions brought under the provisions of this chapter shall be commenced *within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based*, and not after; provided however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five days from the date the chief executive officer of the state agency receives the notice of claim. . . .

Miss. Code Ann. § 11-46-11(3) (emphasis added).  Thus, our inquiry concerns whether the "tortious, wrongful or otherwise actionable conduct" took place on September 16, 1998, or December 16, 1998, as the State contends or January 26, 1999, as Doe contends.

¶37.    Doe's negligent supervision claim is based on the State's alleged negligence in supervising Adams after he reported to Field Officer Smith.  This claim is independent of the negligent acceptance claim which was based upon the provisions of the Compact.  She could not have possibly filed suit on her negligent supervision claim within one year of MDOC's acceptance of Adams or his actual reporting for supervision since she did not sustain damages as the result of any "tortious, wrongful or otherwise actionable conduct" until she was raped on January 26, 1999.  We hold that the one-year window to file a notice of claim did not begin to run until January 26, 1999, the day Doe was raped.  Doe's notice of claim and complaint, insofar as the negligent supervision claim is concerned, were filed timely.

## CONCLUSION

¶38.   We sympathize with Doe for the great trauma that she suffered.  However, in the absence of a statutory violation that can be causally linked to the rape or a specific threat on the part of a parolee to harm another, we will not impose liability.  As such, the Lafayette County Circuit Court's grant of summary judgment in favor of the State of Mississippi, acting through the Mississippi Department of Corrections and the State Parole Board, is affirmed.

¶39.   **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., EASLEY, CARLSON AND GRAVES, JJ., CONCURS. McRAE, P.J., CONCURS IN RESULT ONLY. COBB AND DIAZ, JJ., NOT PARTICIPATING.**