# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-IA-01527-SCT

*OTHA STEWART, BY AND THROUGH EMMA WOMACK, HER DAUGHTER AND CONSERVATOR OF HER PERSON AND HER ESTATE*

*v.*

*CITY OF JACKSON, MISSISSIPPI, AND DORIS B. SPILLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/1/1999 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARK C. BAKER |
| | JAMES A. BOBO |
| ATTORNEYS FOR APPELLEE: | DARLA Y. MANNERY-PALMER |
| | PATRICIA KAY MONSON |
| | MICHAEL JEFFREY WOLF |
| NATURE OF THE CASE: | CIVIL-PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED-01/17/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/7/2002 |

**BEFORE McRAE, P.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. After exiting from a van which was managed, operated and controlled by the City of Jackson, Otha Stewart (Stewart) fell and was injured walking towards the adult day care center which she had been attending for several years. The center was managed, operated and controlled by the University of Mississippi Medical Center (UMMC). The driver of the van, Doris Spiller (Spiller), was substituting for the regular driver of the route that day. Stewart filed suit naming the City of Jackson, Spiller, and UMMC as defendants. The City of Jackson and Spiller moved for summary judgment claiming there was no genuine issue of material fact and they were immune from suit under the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Supp. 2001). The circuit court denied summary judgment in favor of UMMC and granted summary judgment in favor of the City of Jackson and Spiller. Pursuant to M.R.A.P. 5, we granted Stewart's petition to bring this interlocutory appeal. Stewart raises seven issues which are combined into three assignments of error:

> **I. THE CITY OF JACKSON, MISSISSIPPI IS NOT IMMUNE FROM LIABILITY IN THIS CASE UNDER THE MISSISSIPPI TORT CLAIMS ACT.**

**II. THE CITY OF JACKSON IS SUBJECT TO A TRIAL ON THE MERITS OF THE CLAIMS BASED UPON ITS BREACH OF CONTRACT.**

**III. THE LAW DOES NOT AUTHORIZE THE DISMISSAL OF SPILLER AND ALLOWS A JUDGMENT TO BE ENTERED AGAINST HER.**

¶2. Concluding that the trial court erred in granting the summary judgment in favor of the City and Spiller, we reverse and remand.

## FACTS

¶3. Otha Stewart was 72 years old at the time this action arose. Nineteen years earlier, she had suffered a stroke that resulted in partial paralysis on the right side of her body. To walk, she needed the assistance of a brace on her right leg and a four-prong cane.

¶4. Stewart began attending an adult day care center (care center) operated by the UMMC in 1993. The care center, operated through a contract between UMMC and the Central Mississippi Planning and Development District/Area Agency on Aging (agency), provided care, supervision, activities and services to older ambulatory adults. The goal of the program was to "provide care, supervision and services to individuals who are capable of only limited self-care; meet health maintenance and rehabilitation need and promote maximum level of independent functioning." Stewart and other participants were taken to and from the care center in a van owned and operated by the City of Jackson under its senior transportation contract with the agency.

¶5. On August 11, 1997, Doris Spiller was operating the van in the absence of the regular route driver. According to Spiller, after assisting Stewart from the bus and making sure she was steadied, Spiller began assisting the next passenger off the van. Stewart began walking towards the care center with her walker. Spiller turned and noticed Stewart was falling and tried unsuccessfully to break her fall. According to Emma Womack (Womack), Stewart's daughter and care giver, Stewart was taken to the emergency room where X-rays were taken and she was checked out by a doctor. The doctor at the emergency room said Stewart seemed fine, told Womack to watch over her for several days, and discharged Stewart.

¶6. According to Womack, Stewart stayed home from the Center the next two day because she was still hurting. However, Stewart "was determined, she wanted to go" to the care center on August 14, even though she admitted to Womack that "she was still hurting and her head and legs were still bothering her", so Womack called for transportation and Stewart was picked up and taken to the care center. That day "she [Stewart] basically was able to operate and to walk like she had prior to the accident on her own with the use of a cane" according the care center's director. The next day, August 15th, Stewart again fell, this time while in the bathroom of the care center. However, this fall was not considered serious, from the care center's standpoint, because Stewart's daughter was not called and Stewart remained at the care center for the rest of the day. According to Womack, later that night Stewart began complaining about her head and she was unable to rest. The next morning, Stewart regurgitated her breakfast and "was real disoriented; she couldn't stand up or anything" so Womack called the ambulance to take Stewart again to the St. Dominic emergency room, where they gave her some prescriptions for pain and muscle relaxers, then discharged her. A few days later Womack took Stewart to see Dr. Calvin Ramsey who referred her to Dr. Don Gipson, who had Stewart admitted to the hospital for further tests. According to Womack, Dr. Gipson told her that Stewart had suffered another massive stroke, "far worse than the one she had in the 70's."

¶7. Stewart claims that as a result of the August 11th fall, she sustained substantial damages and injuries. Stewart further claims that the City of Jackson and Spiller were negligent in letting her attempt to walk from the van to the Center unassisted and this negligence caused her fall. Stewart also claims that her physician, Dr. Ramsey, will testify at trial that "her medical condition and physical problems since the fall are proximately caused by the fall" and that "it is expected that the other doctors who saw her will concur with Dr. Ramsey." Stewart further claims that she is a third-party beneficiary of the transportation contract between the City and the agency and that the City is liable for breach of contract.

## STANDARD OF REVIEW

¶8. When the issues presented on an interlocutory appeal are questions of law, this Court will review those issues, as all other questions of law, de novo. *Gant v. Maness*, 786 So.2d 401, 403 (Miss. 2001). "The standard for reviewing a grant or denial of summary judgment is the same standard as employed by the trial court under Miss. R. Civ. P. 56(c)."*Gant,* 786 So.2d at 403 (citing *Massachusetts Bay Ins. Co. v. Joyner*, 763 So.2d 877, 878 (Miss. 2000)). This Court conducts de novo review of an order granting or denying summary judgment and examines all the evidentiary matters before it- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.. The evidence is viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. *Id.* Issues of fact sufficient to require denial of a motion for summary judgment are present where one party swears to one version of the matter in issue and another says the opposite. *Leflore County v. Givens*, 754 So.2d 1223, 1225 (Miss. 2000). In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt." *Id.* (citing *Quinn v. Mississippi State Univ.,* 720 So.2d 843, 846 (Miss. 1998)).

## ANALYSIS

### I. IS THE CITY OF JACKSON IMMUNE FROM LIABILITY IN THIS CASE UNDER THE MTCA?

¶9. The MTCA provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit. *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So.2d 1136, 1138 (Miss. 1999); *see* Miss. Code Ann. § 11-46-7(1)(Supp. 2001). Any tort claim filed against a government entity or its employee shall be brought only under the MTCA. The MTCA waives sovereign immunity from claims for money damages arising out of the torts of governmental entities and their employees. However, certain circumstances are exempt from this waiver of immunity. *L.W.*, 754 So.2d at 1139. *See* Miss. Code Ann. § 11-46-9 (Supp. 2001).

¶10. Two such exemptions from waiver are germane to the case sub judice:

(1) a governmental entity and its employees acting within the course and scope of their employment, or duties shall not be liable for any claim:

. . .

(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a

statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;

. . .

i. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;

Miss. Code Ann. § 11-46-9 (Supp. 2001).

¶11. In *Jones v. Mississippi Dep't of Transp.*, 744 So.2d 256, 260 (Miss. 1999), this Court addressed the matter of discretionary functions as follows:

The United States Supreme Court has recognized that the majority of acts in the day-to-day operations of governmental activities involve the exercise of some form of discretion, however, not all of these acts are protected under the exception. In determining the scope of the acts protected under the exception, the Supreme Court held that **only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected**. '[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' **In discerning whether a function is afforded immunity under the discretionary function, it must first be determined whether the activity involved 'an element of choice or judgment.' If so, it must then be determined 'whether the choice involved social, economic or political policy.'**

*Id.* (emphasis added & citations omitted)(citing *United States v. Gaubert*, 499 U.S. 315, 322 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). "In determining whether governmental conduct is discretionary so as to afford the governmental entity immunity, this Court adopted the public policy function test as set out in *United States v. Gaubert*." *Id.*

¶12. However, this does not end the analysis. Even if the government entity and its employee can pass the "public policy function test," and the act or omission is held to be discretionary, it does not "absolve . . . [the government entity and its employee] from using ordinary care in the exercise of their discretion." *Leflore County*, 754 So.2d at 1227, (citing *Jones*, 744 So.2d at 262-64)). Where the state actor fails to use ordinary care there is no shield of immunity. *Id.*

¶13. The City of Jackson contends that if the act or omission is not statutorily imposed, it is discretionary, and as such not subject to the waiver of immunity. In support of this contention, the City cites *L.W.* and argues that this Court recognized the existence of a state or federal law obligating the conduct at issue, rendered it ministerial and not discretionary. Thus, the focus of the analysis was whether there was a state (or federal) law that created a legal obligation on the part of the governmental entity. There exists no such law in this case. The City further argues that Stewart failed to point to any state or federal law which obligates the City to insure that Stewart is attended at all times by a city employee while she enters the Adult Day Center , and therefore the actions of the City were clearly discretionary. However, the City of Jackson completely ignores this Court's subsequent decision in *Jones*, where we adopted the "public policy function test" requiring even discretionary acts to be in furtherance of public policy in order to be granted immunity. Further, the City completely ignores this Court's decision in *Givens* where we required that discretionary acts in furtherance of public policy must still be performed with due care.

### A. Did the act involve an element of choice or judgment?

¶14. Stewart argues that the City's abandonment an elderly and infirm patron to make her way alone from the City of Jackson's van up two (2) ramps and into the adult day care center was not discretionary conduct. In the analysis of whether an act of negligence alleged is ministerial or discretionary conduct, this Court has acknowledged that "it is not always easy to determine whether a public official's conduct is ministerial or discretionary in any given case." *T.M. v. Noblitt*, 650 So.2d 1340, 1345 (Miss. 1995). Since both statutory and common law immunity require a determination of discretion, prior case law can be used to define discretionary conduct. *L.W.*, 754 So.2d at 1141. A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof. *Noblitt*, 650 So.2d at 1343 (citing *Poyner v. Gilmore*, 171 Miss. 859, 158 So. 922, 923 (1935)).

¶15. In contrast, an act is ministerial "(if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion."*L.W.*, 754 So. 2d at 1141. However, even if the court deems the act to be ministerial:

> [The governmental entity] and its employees are protected from liability while performing or failing to perform a statutory duty so long as ordinary care is exercised. However, when ordinary care is not exercised, neither . . . [the governmental entity] nor its employees will be protected from liability for performing or failing to perform a statutorily imposed duty.

*Lang v. Bay St. Louis/Waveland Sch. Dist*., 764 So.2d 1234, 1240 (Miss. 1999).

¶16. The duty to transport the Center's patrons, including Stewart, was a contractual obligation, not a statutorily imposed duty. Determining whether certain patrons needed assistance walking from the van to the Center clearly involved judgment and choice. As such, the decision to allow Stewart to walk unassisted was not ministerial, but instead discretionary. However, that merely satisfies the first prong of the three-prong analysis necessary to determine whether the City of Jackson and Spiller are covered by a grant of immunity.

### B. Did the choice or judgment involve some social, economic or political policy?

¶17. Stewart agues that even if some element of choice or judgment was present in the abandonment of this elderly and infirm lady prior to her fall, this choice involved no social, economic or political policy. In adopting the "public policy function test," we said, "only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected." *Jones*, 744 So.2d at 260. "[T]his Court must distinguish between real policy decisions implicating governmental functions and simple acts of negligence which injure innocent citizens." *Gale v. Thomas*, 759 So.2d 1150, 1162 (Miss. 1999).

¶18. We agree with Stewart that this case does not involve real policy decisions implicating governmental functions. Rather, it involves allegations of simple acts of negligence. As such, it fails the second prong of the "public policy function test." Even though the acts or omissions of the City of Jackson and Spiller were indeed discretionary, they are not the type of discretionary acts or omissions contemplated as granting immunity by the MTCA. Therefore, they are discretionary acts or omissions that do not enjoy sovereign immunity.

### C. Did the City of Jackson or Doris Spiller fail to exercise due care?

¶19. Stewart contends that even if the City of Jackson and Spiller can survive the "public policy function test" as adopted by this Court in *Jones*, at the very least, a factual dispute exists as to whether the City of Jackson and Spiller used due care in the exercise of their discretion or if they failed to take reasonable steps to minimize the risk of personal injury, as required by the this Court in *Givens*.

¶20. As this Court has stated, even if the act or omission is deemed discretionary, "[w]here the state actor fails to use ordinary care there is no shield of immunity." *Givens*, 754 So.2d at 1227. "The issue of ordinary care is a fact question." *L.W.*, 754 So.2d at 1142. "The question of whether ordinary care was, in fact, exercised is for the trial court, sitting without a jury, to decide." *Lang*, 764 So.2d at 1240. We recently clarified this duty of ordinary care referred to in *L.W.* where we said:

> This Court held that public schools have a responsibility to provide a safe environment for students; therefore ordinary care and reasonable steps must be taken to minimize risk to students. In other words, ordinary care must have been used before a school can use the statutory shield of immunity. The issue of ordinary care is a fact question that should be decided in the trial court . . . We do not find that the duty turns upon the issue of whether the function was discretionary or ministerial. Instead, *L.W.* stands for the proposition that the school district has a duty of ordinary care with respect to providing a safe environment for its patrons.

*Pearl Pub. Sch. Dist. v. Groner*, 784 So.2d 911, 915 (Miss. 2001)(citations omitted). In *Groner*, this Court remanded the case to the trial court for a factual determination on ordinary care because the "trial judge made no reference to ordinary care in his findings of fact and conclusions of law." *Id.* at 916.

¶21. We agree with Stewart, that even if the City of Jackson and Spiller had passed the "public policy function test," the fact that the trial court did not address the issue of ordinary care would be in itself grounds for reversal.

¶22. We hold that Stewart's first assignment of error is well taken.

### II. IS THE CITY OF JACKSON SUBJECT TO A TRIAL ON THE MERITS FOR CLAIMS BASED UPON BREACH OF CONTRACT?

¶23. The City of Jackson claims that it cannot be held liable for breach under any theory of contract and can only be held liable in this case under the MTCA, relying on Miss. Code Ann. § 11-46-3(1)(Supp. 2001):

> [T]he 'state' and its 'political subdivisions' . . . always have been and continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract . . . notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.

Miss. Code Ann. § 11-46-3(1)(Supp. 2001).

¶24. However, in interpreting this statute, this Court has said:

> The general rule is that when the legislature authorizes the State's entry into a contract, the State necessarily waives its immunity from suit for a breach of contract. Where the state has lawfully entered

into a business contract with an individual, the obligations and duties of the contract should be mutually binding and reciprocal. There is no mutuality or fairness where a state or county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations.

*Gulfside Casino P'ship v. Mississippi State Port Auth*., 757 So.2d 259, 256 (Miss. 2000) (quoting ***Cig Contractors, Inc. v. Mississippi State Bldg. Comm'n***, 399 So.2d 1352, 1355 (Miss. 1981)). "Sovereign immunity does not bar actions against the state or its political subdivisions brought on a breach of contract theory." ***Quinn v. Mississippi State Univ.***, 720 So.2d at 850 (quoting ***Churchill v. Pearl River Basin Dev. Dist***., 619 So.2d 900, 903 (Miss. 1993)). In ***Quinn***, this Court was faced with the situation where a twelve-year-old boy was hit in the mouth by a baseball bat while attending a baseball camp. ***Id.*** at 845. The suit was dismissed by the trial court on summary judgment. ***Id.*** at 844. We held that:

> The Quinns paid an "admission fee" to have their son, Brandon, attend the baseball camp at Mississippi State University. By doing so, they entered into an implied contract with the university. This contract carried with it the implied promise that the university would provide a safe instructional environment for the campers attending the baseball camp. This Court holds that when Brandon was hit in the mouth with the bat, the university breached its contract with the Quinns. Therefore, the suit against the university was not barred and was not ripe for summary judgment.

***Id.*** at 850.[1]

¶25. Stewart argues that the City of Jackson had contracted with the Agency to provide her with safe delivery to the daycare center, not the parking lot in front of the daycare center. Stewart further claims that she is a third-party beneficiary of this contract and as such, has a cause of action for its breach thereof. Stewart quotes ***Hanberry Corp. v. State Bldg. Comm'n***, 390 So.2d 277, 279 (Miss. 1980), for the elements of a successful third-party beneficiary claim:

> In order for the third person beneficiary to have a cause of action, the contracts between the original parties must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. This obligation must have a legal duty which connects the beneficiary with the contract. In other words, the right (of action) of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.

***Id.*** at 279.

¶26. We agree that Stewart is a third-party beneficiary of the transportation contract between the City of Jackson and the agency. We further hold that there are factual issues unresolved making this case not ripe for summary judgment based upon the claims for breach of contract.

### III. DOES THE LAW AUTHORIZE THE DISMISSAL OF SPILLER AND PROHIBIT A JUDGMENT BEING ENTERED AGAINST HER?

¶27. It is undisputed that at the time of Stewart's injury, Doris Spiller was acting in her capacity as an employee of the City of Jackson. However, Stewart claims that the MTCA does not preclude actions against employees in their representative capacity, rather it expressly provides for their joinder and for judgments against them, citing Miss. Code Ann. § 11-46-7(2) (Supp. 2001):

An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.

Miss. Code Ann. § 11-46-7(2)(Supp. 2001). Stewart claims that even though Spiller cannot be held personally liable, the statute permits joinder of Spiller in her representative capacity, and that she is a proper party and may have a judgment entered against her. Stewart further contends that the only protection the MTCA provides Spiller is that her capacity in the litigation is only as a representative, and that the City of Jackson, Mississippi must pay any judgment against her. The pertinent part of the MTCA reads as follows:

[F]rom and after October 1, 1993, as to political subdivisions, . . . every governmental entity shall be responsible for providing a defense to its employees and for the payment of any judgment in any civil action or the settlement of any claim against an employee for money damages arising out of any act or omission within the course and scope of his employment . . ..

Miss. Code Ann. § 11-46-7(3)(Supp. 2001).

¶28. The City of Jackson responds by arguing that the Stewart sued Spiller in her individual capacity, and since no employee can be held personally liable for acts or omissions occurring within the course and scope of the employee's duties, summary judgment was properly granted. The complaint simply names Spiller as a citizen of Jackson and states that she may be served with process at her place of employment, the City of Jackson.

¶29. The parties cite no other authority for their argument. Instead, they each rely upon their own interpretation of the statute. Although this question has not been directly considered by this Court, we look to our decisions in which the case against the individual employee was dismissed after the employer/sovereign was dismissed.

¶30. In *Duncan ex rel. Duncan v. Chamblee*, 757 So.2d 946 (Miss.1999), we dealt with the situation where the plaintiff (Duncan) voluntarily dismissed the school district from the suit, leaving the teacher (Chamblee) who allegedly administered excessive corporal punishment as the sole defendant. *Id.* at 947. We held:

Duncan had failed to state a claim upon which relief can be granted because she alleges that Chamblee was acting within the course and scope of her employment. This is fatal to Duncan's claim because Chamblee cannot then be individually liable. Chamblee would then fall within the protection of the MTCA along with her employer/sovereign who was voluntarily dismissed with prejudice by Duncan.

*Id.* at 951.

¶31. Two years later we dealt with this same issue, citing with approval our decision in *Duncan*:

This Court has dealt with the issue and affirmed the dismissal of a suit against an individual employee acting within the scope of her employment, after the dismissal of the employing subdivision. . . This Court has been consistent in rejecting the viability of claims against public employees where their

political subdivision employer has been eliminated as a defendant.

*Cotton v. Paschall*, 782 So.2d 1215, 1218 (Miss. 2001). In *Cotton*, the school district was dismissed from the lawsuit, and the plaintiff did not appeal that decision. *Id.* at 1217. The plaintiff stipulated " that an employee acting within the course and scope of her employment is immune from personal liability, but argue[d] that a judgment may be taken against an employee and that judgment must be satisfied by the employing governmental entity." *Id.*

We rejected that argument. However, in the case sub judice, the governmental entity has not been dismissed, so Spiller does not come under the protection of *Duncan* and *Cotton*. Under the plain language of the MTCA, even though Spiller may not be personally liable for her acts and omissions occurring within the course and scope of her duties as an employee, she still may be joined in the action against her employer, the City of Jackson, if her acts or omissions are ones for which the City of Jackson may be liable. Thus, we also reverse and remand the summary judgment granted in favor of Doris Spiller.

## CONCLUSION

¶32. We hold that the City of Jackson and Doris Spiller failed in their burden of demonstrating there was no genuine issue of material fact. Therefore, the trial court erred in granting summary judgment in favor of the City of Jackson and Spiller. Accordingly, the judgment of the Hinds County Circuit Court is reversed, and this case is remanded to that court for a trial on the merits consistent with this opinion.

¶33. **REVERSED AND REMANDED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., NOT PARTICIPATING.**

1. In *Quinn*, the plurality opinion was written by Justice Roberts, joined by Chief Justice Prather, Presiding Justice Pittman and Justice Smith. Justice Banks concurred in part and dissented in part, joined by Presiding Justice Sullivan and Justice McRae. Justice Banks concurred on the issue that contained the quoted excerpt but dissented on a different issue that applied qualified immunity to some of the defendants. Justice Mills concurred in part and dissented part. Justice Mills dissented on the issue germane to this case, arguing that sovereign immunity under the MTCA should bar Quinn's breach of implied contract claim as well as the tort claim against MSU. Justice Waller did not participate.