ISHEE, J.,
for the Court:
¶ 1. Ricky L. Haggard was employed by the City of Jackson, Mississippi (the City), through a federal grant program for approximately three years. The grant provided a salary for Haggard’s position of up to $70,000 per year. After his employment was terminated, Haggard filed suit in the Hinds County Circuit Court against the City, alleging that the City owed him ap *799 proximately $91,000 in retroactive pay because he received less annual salary throughout his employment than the grant’s yearly maximum. Haggard further asserted claims of racial discrimination against the City. Thereafter, the City filed a motion to dismiss, which was granted as to Haggard’s contract claims. However, with regard to the claims of racial discrimination, the circuit court requested that the parties provide the court with information outside of the pleadings for the court’s review. As such, the remainder of the City’s motion to dismiss, concerning the racial-discrimination claims, was converted by the circuit court into a motion for summary judgment. On April 16, 2010, the circuit court granted the City’s motion and entered a judgment dismissing all claims with prejudice. Aggrieved, Haggard appeals. Finding no error, we affirm.
FACTS
¶ 2. In April 2003, Haggard was hired by the City to serve as a project manager for the City’s Metropolitan Medical Response System (MMRS) grant program. The MMRS grant program was a federally funded grant that allotted a maximum annual salary of $70,000 for the project-manager position. The record reflects that during the three years and four months that Haggard was employed as project manager, he was paid less than $70,000 per year. According to Haggard, the provisions of the MMRS grant-program contract provided him eligibility for a raise in September 2003. However, Haggard did not receive a raise at that time, or any time thereafter.
¶ 3. In 2005, the City hired Todd Chandler as fire chief. As fire chief, Chandler was Haggard’s supervisor. Chandler terminated Haggard’s employment in August 2006. Haggard asserts that his termination was based on his' being a black male. He further argues that Chandler, as a white male, made numerous other employment decisions that reflected racial discrimination. The City terminated Chandler’s employment in 2007.
¶ 4. Pursuant to the Mississippi Tort Claims Act (MTCA), Haggard filed a notice of claim against the City in April 2007. On September 5, 2007, Haggard filed suit in the circuit court claiming breach of contract, fraudulent and/or negligent misrepresentation, promissory estoppel, and racial discrimination under 42 U.S.C. §§ 1981 and 1983 (2003).
¶ 5. The City filed a motion to dismiss all claims, which was granted in part and denied in part. The circuit ■ court dismissed Haggard’s breach-of-contract claim. Haggard did not have a written employment agreement with the City. Rather, the terms of his employment were understood by virtue of an implied employment contract or a quasi-contract. The court found that under the MTCA, the City cannot be liable for any breach of an implied contract.
¶ 6. Haggard conceded that his claims of fraudulent or negligent misrepresentation and promissory estoppel should be dismissed. The circuit court then determined that Haggard’s argument that he was a third-party beneficiary to the MMRS grant-program contract between the City and the federal government was not well-taken. Accordingly, the circuit court dismissed all of Haggard’s breach-of-contract claims.
¶ 7. The circuit court then granted the parties forty-five days to provide additional evidence regarding the racial-discrimination claims. Whereas review of a motion to dismiss allows a circuit court to consider only the information contained in the pleadings, analysis of a motion for summary judgment permits a circuit court *800 to study additional information not found in the pleadings. Because the circuit court requested information outside of the pleadings regarding its analysis of the racial-discrimination claims, the court converted the remainder of the City’s motion to dismiss into a motion for summary judgment.
¶ 8. On April 16, 2010, the circuit court reviewed the parties’ supplemental submissions and granted the City’s motion for summary judgment as to Haggard’s remaining racial-discrimination claims. The circuit court determined that because the City is a municipality, it cannot be held liable for any employee violations. The court further found that because Haggard failed to show that the City utilized a specific policy of racial discrimination, Haggard’s claims must rest upon his showing that the City customarily practiced racial discrimination such that it was essentially a municipal policy.
¶ 9. Haggard did not provide any evidence showing the City maintained a policy of practicing racial discrimination other than his own personal affidavits. Accordingly, the circuit court held that Haggard had failed to meet his burden of proof under the law and dismissed the case. Haggard appeals, claiming: (1) the circuit court erred in granting the City’s motion to dismiss as to his breach-of-contract claims; and (2) the circuit court erred in granting the City’s motion for summary judgment as to his racial-discrimination claims. Having found no error, we affirm the circuit court’s judgment.
DISCUSSION
¶ 10. The Mississippi Supreme Court has held that an appellate court “reviews a trial court’s grant or denial of a motion for summary judgment or a motion to dismiss under a de novo standard.” Copiah County v. Oliver, 51 So.3d 205, 207 (¶ 7) (Miss.2011) (citation omitted). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). Although this Court must view the evidence in the light most favorable to the non-moving party, the party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). “[W]hen a party[] opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.” Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987).

I. Breach-of-Contract Claims

¶ 11. The MTCA governs the immunity of the state and its political subdivisions, including the City, from liability for torts committed by the state, its political subdivisions, and their employees. Miss.Code Ann. § 11-46-3 (Rev.2002). As such, the MTCA “grants immunity to the state and its political subdivisions for ‘breach of [an] implied term or condition of any warranty or contract.’ ” City of Jackson v. Estate of Stewart ex rel. Womack, 908 So.2d 703, 711 (¶ 38) (Miss.2005) (quoting Miss.Code Ann. § 11-46-3). Here, the record reflects that while Haggard was employed by the City through the MMRS grant program, no written contract existed to outline the parties’ agreement.
¶ 12. The supreme court has held that “the traditional features of an employment *801 contract are (1) consent of the parties, (2) consideration for the service rendered, (3) and control by the employer over the employee.” Levens v. Campbell, 733 So.2d 753, 758 (¶ 15) (Miss.1999) (citation omitted). In the instant case, it is clear that the City and Haggard both consented to Haggard’s employment. The City benefit-ted from Haggard’s services and in return, Haggard received a salary. The record further reflects that the City exercised control over Haggard during his employment. Accordingly, we agree with the circuit court in its finding that Haggard and the City operated under an implied contract.
¶ 13. Haggard does not argue that he was not paid for his services. Rather, he claims he was not paid enough in light of the maximum salary allowed by the MMRS grant program. As such, eligibility for a raise would be an implied condition of the implied contract between Haggard and the City. The MTCA specifically provides that breach of an implied term or condition of any contract does not negate the immunity of the state or its political subdivisions. Miss.Code Ann. § 11-46-3. Hence, as a matter of law, the City cannot be held liable for Haggard’s breach-of-contract claim.
¶ 14. Additionally, Haggard asserted that he was a third-party beneficiary to the contract between the City and the federal government concerning the MMRS grant program. With regard to third-party beneficiaries, the supreme court has held the following:
In order for the third[-]person beneficiary to have a cause of action, the contracts between the original parties must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third[-]person beneficiary. This obligation must have a legal duty which connects the beneficiary with the contract. In other words, the right (of action) of the third[-]party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.
Stewart ex rel. Womack v. City of Jackson, 804 So.2d 1041, 1051 (¶ 25) (Miss.2002) (citation omitted).
¶ 15. Stewart involved a patient at an adult day-care program, a program sponsored, in part, by the Central Mississippi Planning and Development District/Area Agency on Aging (Agency). Id. at 1044 (¶ 4). The patient was injured after stepping off of a bus operated by the City for the purpose of carrying passengers to and from the day-care. Id. at 1044 (¶¶ 4-5). The court determined that the patient was a third-party beneficiary of the transportation contract between the City and the Agency because the contract in question existed to benefit persons, such as the patient in question, who needed transportation to and from the day-care. Id. at 1051 (¶¶ 25-26).
¶ 16. According to Haggard, his employment through the MMRS grant program involved the “managing] and coordinating of] a strategic plan in the event of a terrorist attack involving the use of weapons of mass destruction.” The City asserts that the purpose of the MMRS grant program was “to integrate the local public health and medical resources into the local emergency management plan so as to enhance the community’s ability to respond and manage the health consequences of a nuclear, biological, or chemical terrorist incident.” In either event, the contract between the City and the federal government regarding the funding of the MMRS grant program was negotiat *802 ed for the benefit of the public. Haggard, as an employee within the MMRS grant program, was not a direct beneficiary. His employment was an indirect consequence of the contract between the City and the federal government.
¶ 17. Therefore, we affirm the circuit court’s judgment dismissing Haggard’s breach-of-contract claims. This issue is meritless.

II. Racial-Discrimination Claims

¶ 18. Haggard argues that the City is liable for racial discrimination under sections 1981 and 1983. Section 1981 allows for equal rights for all persons “to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.” Section 1983 provides the legal vehicle through which a party may sue for a violation of section 1981.
¶ 19. The United States Supreme Court has specifically held that a state municipality cannot be found liable for an employee’s violation of section 1981 under a theory of respondeat superior. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 731, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). In Jett, the Supreme Court determined that Congress intended for section 1983 to be “controlling in the context of damages actions brought against state actors alleging violation of the rights declared in section 1981.” Id. The Supreme Court went on to say that its interpretation granted lawful private action against state actors pursuant to section 1983, but it did not extend to allow suit against state actors via section 1981. Id.
¶ 20. Two years after Jett, Congress amended section 1981 by adding subsection (c), which states that the rights referenced in section 1981 “are protected against impairment by nongovernmental discrimination and impairment under col- or of State law.” The United States Fifth Circuit Court of Appeals subsequently addressed the question of whether the addition of subsection (c) abrogated the Supreme Court’s ruling in Jett regarding liability of state actors under section 1981. Oden v. Oktibbeha County, Miss., 246 F.3d 458, 462-64 (5th Cir.2001). Therein, the Fifth Circuit stated: “Because Congress neither expressed its intent to overrule Jett, nor explicitly created a remedy against state actors in addition to section 1983, we are not willing to deviate from the Supreme Court’s analysis of section 1981 in Jett.” Id. at 464. Accordingly, the relief sought by Haggard under section 1981 was properly dismissed by the circuit court.
¶ 21. Haggard next claims that the City violated section 1983 by “failing to pay [him] the proper salary and benefits as set forth in the grant[,] coupled with [his] removal ... from the position of Project Manager and the subsequent replacement of [him] with a white male.” Haggard further asserts that the acts of former Fire Chief Chandler constituted a “custom and practice” of racially discriminatory actions on the part of the City.
¶ 22. The United State Supreme Court has held that an action under section 1983 against a state actor is valid if the plaintiff shows that the “execution of a government’s policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflictfed] the injury.” Monell v. Dep’t of Soc. Servs. of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The City may not be held liable for the actions of its employees unless Haggard can prove that the City adopted a policy or custom of discrimination. In or *803 der to do so, Haggard must show the following:
1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality’s lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under [section] 1988 unless they execute official policy as above defined.
Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir.2002) (citations omitted).
¶23. In support of Haggard’s theory that the City employed a policy or custom of racial discrimination, Haggard merely provided the circuit court with his own pleadings and affidavits reflecting allegedly discriminatory actions of former Fire Chief Chandler. Haggard did not provide the circuit court with any further evidence of Chandler’s purported actions, or evidence of any discriminatory actions on the part of the City or other City employees. Accordingly, Haggard failed to meet his burden of proof in showing that the City, or its employees, operated under a custom or practice of racial discrimination. This issue is without merit.
CONCLUSION
¶ 24. The City provided for Haggard’s employment with funds from the MMRS grant program through an implied contract. Haggard does not claim that the City failed to provide him with the promised payment. Rather, he claims that the City failed to raise his salary to the maximum amount provided for in the MMRS grant program. Accordingly, Haggard asserts breach-of-contract issues which are expressly barred by the MTCA. Furthermore, Haggard’s argument that he was a third-party beneficiary to the contract between the City and the federal government regarding the MMRS grant program fails. Haggard’s employment under the MMRS grant program was an indirect consequence of a plan intended to benefit the general public. Finally, Haggard’s racial-discrimination assertions are meritless. His claim under of section 1981 fails as a matter of law. Additionally, he has not provided sufficient evidence to support an argument under section 1983 that the City exercised a custom or practice of racial discrimination. Accordingly, we affirm the circuit court’s judgment dismissing Haggard’s case with prejudice.
¶ 25. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. RUSSELL, J., NOT PARTICIPATING.