CARLTON, J., for the Court:
¶ 1. Jimmy Swindle (Swindle), individually and as natural father and guardian of Jason Swindle (Jason), a minor, filed the present action against the Neshoba County School District (School District) pursuant to the Mississippi Torts Claims Act (MTCA), Mississippi Code Annotated section 11-46-1 (Rev.2012), et seq., after his son was injured during a school-sponsored activity. The Neshoba County Circuit Court granted the School District’s motion for summary judgment after finding the School District was entitled to discretionary-function immunity under the MTCA. Swindle now appeals. We find that the trial court erred in determining that dis *871 cretionary immunity of the MTCA barred the action. We, therefore, reverse the grant of summary judgment and remand this case to the trial court for further proceedings. We find a genuine issue of material fact exists as to whether the School District violated its affirmative duty to maintain discipline and to supervise the students, as required by the School District’s handbook.
FACTS
¶ 2. On May 4, 2007, two members of the Neshoba Central High School football team, Eathan Scarbrough and Jason, got into a physical altercation on the football field during football practice after school. Jason testified that he was walking back to the lines during practice when all of a sudden he felt Eathan on top of him, hitting him. The coaches on the field intervened and inquired as to why the two were fighting. Jason responded, “I don’t know,” and Eathan gave no response. During his deposition, Jason admitted that these types of minor skirmishes are common during football practice, due to its physical nature, and the skirmishes are usually over soon after they happen.
¶ 3. According to Swindle, the next day, on May 5, 2007, when left unsupervised in front of the football locker room after football practice, Eathan again attacked Jason and accused him of talking negatively about Eathan. This time, Eathan beat Jason so severely that he suffered brain damage and bodily injury. Swindle states that Jason suffered a seizure after being knocked to the ground by Eathan. The players notified the coaches of the altercation. Upon arriving at the field house, Coach John Mullins observed Jason lying on the ground, and he testified that Jason was not exhibiting any seizure-like symptoms at that time. When Coach Mullins knelt down to check on Jason, he testified that Jason lunged out and punched Coach Mullins in the nose while yelling at Eath-an. Coach Mullins also stated that several coaches and players had to restrain Jason.
¶ 4. Coach Chuck Friend then instructed Jason to follow him to his office. Jason informed Coach Friend that he could not remember what happened, so Coach Friend returned to the field house to gather details from the players who had witnessed the incident. Swindle claims that the coaches did not call for immediate emergency medical assistance upon learning of the altercation. He also states that Jason suffered a second seizure, this time while unattended in Coach Friend’s office, when Coach Friend was questioning other football players about the incident. Coach Mullins arrived to the office and observed Jason experiencing the second seizure and called an ambulance.
¶ 5. On February 13, 2009, Swindle filed his third amended complaint against the School District, Eathan, and Eathan’s parents, Wendell and Martha Scarbrough, in Neshoba County Circuit Court. Swindle alleged that the School District breached the following duties: the duty to discipline and supervise its students as set forth in the Neshoba County School District handbook; the duty to provide a quick response to a medical emergency; and to adequately hire, train, and monitor its employees. The School District filed its answer and affirmative defenses on March 15, 2009.
¶6. On February 23, 2011, the School District filed a motion for summary judgment, claiming discretionary-function immunity pursuant to the MTCA. Swindle responded with a counter-motion for summary judgment on October 12, 2011. On February 28, 2012, the trial court granted the School District’s motion for summary judgment, entered a Rule 54 judgment of dismissal, and denied Swindle’s counter- *872 motion for summary judgment. This appeal followed.
¶7. We find that the School District possessed a ministerial duty to maintain discipline and to supervise the students on school property during a school-sponsored activity, as required by the School District’s handbook; thus, a genuine issue of material fact exists as to whether the School District breached its duty to exercise ordinary care in supervising students. The discretionary-function immunity of the MTCA fails to apply herein as to this issue; accordingly, we reverse the trial court’s grant of summary judgment and remand on this basis.
STANDARD OF REVIEW
¶ 8. This Court applies a de novo standard when reviewing a trial court’s grant or denial of summary judgment. Waggoner v. Williamson, 8 So.3d 147, 152 (¶ 11) (Miss.2009). Mississippi Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” The supreme court has established that “[t]he moving party has the burden of demonstrating that no genuine issue of material fact(s) exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.” Waggoner, 8 So.3d at 152-53 (¶ 11) (citations omitted).
DISCUSSION
¶ 9. Swindle argues that the trial court erred in granting the School District’s motion for summary judgment. Swindle specifically argues that the trial court erred in concluding that the actions and conduct of the coaches, teachers, administration in the School District, and the School District itself, constituted a discretionary duty relating to the supervision of the football players at the school. The School District constitutes a governmental entity, and the issue before us addresses whether immunity under the MTCA exists to bar the instant action against the School District in this case, or, if no governmental immunity exists, whether a disputed issue of material fact exists. We agree that the trial court erred in its determination. The School District herein possessed a ministerial duty to supervise and maintain discipline of students at school, as required by the affirmative duties set forth in the School District’s own handbook, and we, therefore, find that a question of material fact exists as to whether the School District breached its duty of ordinary care in performing this duty.[1]
¶ 10. The School District argues that its alleged acts or omissions were not ministerial, but rather discretionary, in nature, thereby providing the School District with immunity pursuant to Mississippi Code Section ll-46-9(l)(d) (Rev.2012). Additionally, the School District argues that its football coaches possessed no notice that Eathan and Jason would engage in a physical altercation on May 5, 2007, and that such action was not foreseeable. The School District further submits that Eathan failed to exhibit any disciplinary problems prior to that point during spring football. In support of this argument, the coaches and Jason testified that skirmishes between the players are not uncommon during football practice. The coaches and Jason also testified that on May 4, 2007, the day before the May 5th assault at issue herein, the coaches intervened immediately after becoming aware of an altercation *873 that occurred during practice. However, the record shows that at the time of this prior altercation on May 4th, when the coaches intervened, they failed to determine the cause of this prior altercation or achieve resolution of any remaining animosity, leaving foreseeability of a future altercation to be a disputed factual issue. The School District’s argument regarding foreseeability fails to address the failure of the coaches to comply with the supervision requirements set forth in the School District’s own handbook.
¶ 11. On May 5, 2007, the day of the assault, the students were unsupervised as they returned to the locker room after football practice ended, in violation of the School District’s handbook defining its supervision policy. With respect to the existence of discretionary immunity or a ministerial affirmative duty, the issue before us pertains to whether the coaches possessed an affirmative ministerial duty to supervise the students players at this time or whether the coaches possessed the discretion to exercise their own judgment regarding how and when to supervise students. Relevant to this inquiry, the students were still on school property within the designated time for practice during a school-sanctioned extracurricular activity, and the coaches were performing their official coaching duties. With respect to duty and discretion, the School District handbook defined the required supervision of students under such circumstances, and the handbook provided no exemption for coaches from this duty. Stated otherwise, the coaches possessed no discretion to refuse or fail to comply with the supervision requirements of the School District’s handbook.
¶ 12. Swindle also argues that the School District possessed a ministerial duty under Mississippi Code Annotated section 37-9-69 (Rev.2007) and under the School District’s handbook requiring Eath-an and Jason to be disciplined following the minor skirmish during tackling practice on May 4, 2007, and requiring supervision of the players the following day after practice when the students returned to the locker room. Swindle argues that the precedent applicable to a coach’s discretion in his operation of a team fails to apply herein, since football drills and instruction had ended and the students were unsupervised while returning to and outside of the locker room when Jason was assaulted.
¶ 13. The School District argues that immunity applies pursuant to 11-46-9(l)(d), and in support this argument, submits that its alleged conduct constitutes discretionary behavior. “A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof.” Stewart ex rel. Womack v. City of Jackson, 804 So.2d 1041, 1048 (¶ 14) (Miss.2002). Our supreme court has deemed the coaching responsibilities of coordinating and supervising high school football players to be discretionary acts. See Harris v. McCray, 867 So.2d 188, 192 (¶ 15) (Miss.2003). The School District maintains that the football coaches at Neshoba Central High School exercised their own judgment and discretion in determining how to effectively operate their team. That judgment includes what drills to run, who played each position, how long practice should last, and the method for returning to the locker room at the conclusion of practice. The School District’s argument certainly addresses a coach’s discretion in teaching the strategies and maneuvers of football and the operation of such instruction. However, the argument fails to address the supervision requirements positively imposed on teachers and coaches by the School District’s handbook and the lack of any exemptions for coaches, from complying with *874 the level of supervision required in the handbook.
¶ 14. The handbook states that these supervision and discipline requirements must be carried out “before, during, and after regular classes and in all extracurricular activities,” and at all times when under the legal supervision of the school. The return to the locker room included no instruction in football strategy, drills, technique, or training, but rather, involved the orderly return of students involved in this activity for personal hygiene and to collect personal belongings before leaving school property. The handbook clearly included all extracurricular activities and contained no exclusion for student football players or their coaches. The students were still un-' der the legal supervision of the school at the sanctioned extracurricular event, using school facilities and on school property.
¶ 15. As stated, the School District “constitutes a ‘governmental entity’ and a ‘political subdivision’ pursuant to the MTCA.” See Covington Cnty. Sch. Dist. v. Magee, 29 So.3d 1, 4 (¶ 7) (Miss.2010) (citing Miss.Code Ann. § 11-46-1 (Rev.2012)). “The MTCA provides the exclusive remedy against a governmental entity or its employee for the act or omission which gave rise to the suit.” Id. (citing Miss.Code Ann. § 11-46-7(1) (Rev.2012)). The supreme court has stated that the MTCA serves to provide immunity from suit to the State and its political subdivisions; however, the court clarified that “the MTCA waives immunity for claims for money damages arising out of the torts of government entities and employees while acting within the course and scope of their employment to the extent set forth in the MTCA.” Id. (citing Miss.Code Ann. §§ 11-46-3(1), 11-46-5(1) (Rev.2012)).
¶ 16. Mississippi Code Annotated section 11^16-9 lists the MTCA exemptions applicable to this case:
(1) A governmental entity and its em- ■ ployees acting within the course and scope of their employment or duties shall not be liable for any claim:
[[Image here]]
(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
[[Image here]]
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part, of a governmental entity or employee thereof, whether or not the discretion be abused;
We turn to case law applying the MTCA to ascertain whether the duties here were discretionary or ministerial.
¶ 17. In Stewart, 804 So.2d at 1048 (¶ 15), the supreme court held that “an act is ministerial (if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer’s judgment or discretion.” Id. (quotation omitted). Section 37-9-69 also requires school districts, principal, and teachers to hold students accountable “for disorderly conduct at school, on the way to and from school, on the playground, and during recess, stating:
It shall be the duty of each superintendent, principal!,] and teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to *875 observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.
If the School District’s conduct is deemed ministerial, it is then protected from liability only if ordinary care is exercised in performing or failing to perform the statutory duty or regulation. Stewart, 804 So.2d at 1048 (¶ 18).
¶ 18. The School District issued a handbook, entitled the Neshoba Central Student Handbook, that sets forth its code of conduct, including the requirement of student supervision. The handbook defines the affirmative duty or standard of ordinary care imposed on teachers and coaches to supervise students during and after class and at all extracurricular activities.[2] The Neshoba Central handbook specifically provides: “The School Board holds all school personnel, including the superintendent, responsible for the proper conduct and control of students while under legal supervision of the school.”[3] The handbook further states: “Administrators and teachers shall hold students to strict account for disorderly conduct or misconduct at any school, on the way to and from school, on the playgrounds, at school meetings, programs, functions and activities and upon school buses.” The handbook mandates: “All teachers must accept responsibility for ... maintaining reasonable discipline among the members of the student body before, during, and after regular classes and in all extracurricular activities -Students should never be left unsupervised!” See also Miss.Code Ann. § 37-9-69 (requires school districts, principals, and teachers to maintain discipline without defining any specific discipline methods or supervision levels, in contrast to the specific supervision requirements defined in the School District’s handbook).
¶ 19. Upon review, we find that neither the school handbook nor the statute provides an exclusion for the teachers or coaches of the football team from the code of conduct or from the rule mandating the faculty’s supervision over the students while on school property during a sanctioned extracurricular activity. See Dixon ex rel. Dixon v. Alcorn Cnty. Sch. Dist., No. 3:10-CV-00092-GHD-SAA, 2012 WL 273079, *4 (N.D.Miss.2012); Lang v. Bay St. Louis/Waveland, Sch. Dist., 764 So.2d 1234, 1240-41 (¶¶ 28-29) (Miss.1999); see generally Garrett v. Nw. Miss. Junior Coll, 674 So.2d 1, 4 (Miss.1996). The handbook specifies that teachers must maintain discipline over students in all extracurricular activities. Therefore, the School District’s duty to supervise the students in this case, as defined by the School District’s own handbook, constitutes a ministerial duty. The handbook left no discretion for teachers or coaches to decide whether to follow the handbook’s supervision requirements for students on school property assigned to their particular field of instruction at a school-sanctioned extra *876 curricular activity. See id. at *4; Lang, 764 So.2d at 1285 (¶¶2-3), 1240-41 (¶¶ 28-29) (student injured after school-sponsored band concert due to falling off a brick wall to avoid a fight; supreme court held “the school district’s duty to control and discipline students is ministerial not discretionary”); see generally Garrett, 674 So.2d at 4.
¶ 20. Accordingly, we find a genuine issue of material fact exists as to whether the School District breached its ministerial duty to exercise ordinary care in supervising students as required by the School District’s handbook. Since we find the MTCA fails to bar this action, we reverse the trial court’s grant of summary judgment and remand this case for further proceedings consistent with this opinion. We find this issue determinative, and also find no merit to Swindle’s argument that a dispute of material fact exists in support of his claim that the School District breached a ministerial duty to seek immediate emergency medical treatment.
¶ 21. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MAXWELL J., NOT PARTICIPATING.

. See Dixon, 2012 WL 273079 at *4; Lang, 764 So.2d at 1240-41 (¶¶ 28-29).

. See generally 7 Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law § 65:208, at 495 (2001), which states:
School boards must adopt and distribute to all teachers, school personnel, students, and parents or guardians a code of student conduct based on the rules governing student conduct and discipline adopted by the school board. Student conduct codes should be published in the student handbook.

. See also Miss.Code Ann. § 37-3-83 (Supp. 2012) (School Safety Grant Program) (Offers various preventative services including metal detectors, video surveillance cameras, etc.; also states that to apply for grant monies, school must adopt a safety plan and update it on an annual basis).